STUART, Justice.
AutoSource Motors, LLC (“Auto-Source”),[1] petitions this Court for a writ of mandamus directing the Montgomery Circuit Court (“the trial court”) (1) to vacate its order denying AutoSource’s- motion to dismiss the action filed against it by Stephanie Michelle Chamberlain for lack of personal jurisdiction and (2) to enter an order granting AutoSource’s motion to dismiss for lack of personal jurisdiction. We grant the petition and issue the writ.

I. Facts and Procedural History

On September 2, 2011, Chamberlain filed in the trial court a complaint against AutoSource. Chamberlain’s complaint set forth the following statement of facts:
“5. Ms. Chamberlain saw an advertisement for an alleged. 2008 Ford Mustang Coupe [automobile] on the Internet.
“6. Auto Source Motors offered the vehicle as a rebuilt vehicle at a competitive price, which interested Ms. Chamberlain.
“7. Ms. Chamberlain contacted Auto Source Motors by telephone and was told by employees, representatives, and/or contractors of [AutoSource] that the vehicle she was interested in was a rebuilt vehicle.
“8. Specifically, Auto Source Motors, through its employees, contractors, and representatives, told Ms. Chamberlain that there existed a salvage title for the car that was able to be retitled in the state of Alabama, and that as specialists in the rebuilding and resale of vehicles, they promised her that the vehicle was able to be retitled in Alabama.
“9. Based on these representations, Ms. Chamberlain traveled to Utah to the dealership.
“10. Once there, Ms. Chamberlain again inquired as to the details of their phone conversation described in paragraph 8.
“11. Again, [AutoSource] restated what was stated above in paragraph 8.
“12. Based on the representations made in. paragraph 8 both on the telephone and at the dealership Ms. Chamberlain purchased the vehicle.
“13. When Ms. Chamberlain attempted to title the vehicle she discovered that in reality (a) the title was a junk title, not a salvage title; (b) junk titles can never be turned into salvage titles; (c) junk titles can never be titled; (d) the vehicle was not in reality a 2008 model, but was instead a hodgepodge of components from all manner of different years of vehicles.”
Based on the facts set forth above, Chamberlain asserted counts of breach of contract, misrepresentation, and suppression against AutoSource. Chamberlain’s only allegation in her complaint regarding jurisdiction was as follows:
*400 “4. Jurisdiction is proper in that Auto Source Motors took actions aimed at Alabama citizens in the course of its business and in particular sought to avail itself of use of the laws of the state of Alabama by claiming its cars could be titled in the state of Alabama as an incentive to Ms. Chamberlain, a citizen of Alabama, to buy one of their vehicles.”
On December 13, 2012, Chamberlain filed an affidavit with the trial court in which she stated:[2]
“1. My name is Stephanie Michelle Chamberlain. I am over the age of 19 and currently reside in Harris County Texas. I moved from Montgomery County Alabama several months after I filed this case.
“2. Auto Source Motors is located in Woods Cross, Utah. Auto Source Motors markets its cars over the Internet. It holds itself out as a specialist in rebuilt cars, with a particular knowledge necessary to be able to rebuild cars and have them titled in other states.
“3. I saw an advertisement for an alleged 2008 Ford Mustang Coupe on the Internet.
“4. Auto Source Motors claimed the vehicle was rebuilt and offered it at a competitive price, which interested me.
“5. I contacted Auto Source Motors by telephone and was told that the vehicle was a rebuilt vehicle.
“6. Specifically, Auto Source Motors workers told me that there was in existence a salvage title for the car that was able to be re-titled in the State of Alabama and that as specialists in the rebuilding and resale of vehicles, they promised me that the vehicle was able to be re-titled in Alabama.
“7. Based on these statements to me, I went on the long trip to Utah to the dealership.
“8. Once there, I asked the same questions again and was again told the same thing as in paragraph 5 and 6.
“9. Based on the statements made to me over the telephone and in-person at the car dealership in Utah, I purchased the vehicle.
“10. When I got the vehicle back to Alabama, I tried to get the title for it, like Auto Source Motors said I could.
“11. I then discovered that in reality the title was a junk title, not a salvage title, and that junk titles can never be turned into salvage titles. I also discovered that junk titles can never be titled at all.
“12. I also discovered that the vehicle was not really a 2008 model, but was actually a mixed up combination of components from all manner of different years of vehicles.
“13. As a result of being tricked, I obtained a loan for the vehicle, for which I’m still responsible; incurred the cost of the trip to and from Utah; had to pay for the insurance, repairs and upkeep; and I have lost hours and hours of my personal and work time dealing with the finance company and the State of Alabama trying to get the car titled in trying to work out an arrangement to pay for or sell the vehicle once I discovered the title problem and that the car was a combination of components from all manner of different years of vehicles.
“14. The documents showing my loan costs, cost of the trip to and from Utah to get the car and bring it back, the cost of insurance, repairs, and upkeep are attached as exhibit A.
*401 “15. I am stuck on the loan on this car, because I cannot get it titled. Without the title I cannot resell it, and I cannot even legally drive it because I cannot get registration for the vehicle or insurance for it. I’m stuck with a car that I cannot legally put on the road yet I have to continue to pay for it fully.”
On October 18, 2013, AutoSource, pursuant to Rule 12(b)(2), Ala. R. Civ. P., filed a motion to dismiss Chamberlain’s action for lack of personal jurisdiction. Specifically, AutoSource argued that it did not have sufficient minimum contacts with the State of Alabama to subject it to suit in the Montgomery Circuit Court. AutoSource set forth the following facts in its motion to dismiss in support of its lack-of-personal-jurisdiction argument:
“1. [Chamberlain] alleges various causes of actions that arose out of the purchase of a 2008 Ford Mustang Coupe advertised on the internet by Auto-source. (Complaint; [Chamberlain’s] affidavit).
“2. Autosource is a Limited Liability Company duly registered in the State of Utah, located in Utah with its principal place of business located in West Woods Cross, Utah. (Affidavit of W. Scott Kjar, [Ex. A]).
“3. Autosource owns no property in the State of Alabama and conducts no business activities in the State of Alabama. (Affidavit of W. Scott Kjar, [Ex. A]).
“4. Autosource is not registered, qualified or licensed to do business in the State of Alabama. (Affidavit of W. Scott Kjar, [Ex. A]).
“5. Autosource is not required to, nor does it pay taxes in the State of Alabama, Autosource does not own any property or assets in the State of Alabama, it does not maintain offices in the State of Alabama, it does not have any employees in the State of Alabama, and it does not have a telephone listing in the State of Alabama. (Affidavit of W. Scott Kjar, [Ex. A]).
“6. Autosource did not knowingly or intentionally markets [sic], solicits [sic] or advertises [sic] products or services in the State of Alabama. (Affidavit of W. Scott Kjar, [Ex. A]).
“7. Autosource has not had any prior business dealings with [Chamberlain] prior to the transaction made the basis of this lawsuit. (Affidavit of W. Scott Kjar, [Ex. A]).
“8. Prior to the transaction with [Chamberlain] made the basis of this lawsuit, Autosource had not ever knowingly or intentionally sold any goods or services to any entity or individual from the State of Alabama. (Affidavit of W. Scott Kjar, [Ex. A]).
“9. [AutoSource] advertised the subject vehicle on its website, which is a national/international internet website dedicated to assisting individuals and businesses in the buying of automobiles. (Affidavit of W. Scott Kjar, [Ex. A]).
“10. [Chamberlain] initiated contact with [Auto-Source] concerning the purchase of the subject vehicle from [Auto-Source], who was, at all times material hereto, located in Utah. (Complaint, [Chamberlain’s] affidavit, affidavit of W. Scott Kjar, [Ex. A]).
“11. [Chamberlain] went to Auto-source in Utah to purchase the vehicle. (Complaint, [Chamberlain’s] affidavit, affidavit of W. Scott Kjar, [Ex. A]).
“12. [Chamberlain] negotiated the purchase in Utah, and left the dealership with the vehicle. (Affidavit of W. Scott Kjar, [Ex. A]).”
AutoSource attached to its motion to dismiss the affidavit of its then president, W. Scott Kjar, which stated:
*402 “My name is W. Scott Kjar. I am over 19 years of age. I have personal knowledge of the matters set forth herein, and I am competent to give testimony in this cause. At the time of the subject transaction, I was the President of Auto-source Motors, LLC.
“I am a bona-fide resident citizen of the State of Utah. I have never lived in the State of Alabama. I do not and never have owned property or assets in the State of Alabama. I do not and never have conducted business activities in the State of Alabama. I have never had any personal contacts with the State of Alabama unrelated to the present lawsuit.
“Autosource Motors, LLC, hereinafter ‘Autosource,’ is a limited liability company duly registered in Utah and having its principal ... place of business in West Woods Cross, Utah. Autosource is not registered, qualified or licensed to do business in the State of Alabama. Autosource is not required to, nor does it pay taxes in or to the State of Alabama. Autosource does not own property or assets in the State of Alabama, does not maintain offices in the State of Alabama, does not have employees in the State of Alabama and does not have a telephone listing in the State of Alabama. Autosource does not knowingly or intentionally market, solicit or advertise products or services in the State of Alabama. I am unaware of any business dealings with any resident of the State of Alabama, prior to the transaction with Stephanie Michelle Chamberlain made the basis of this lawsuit, and Autosource has ever [sic] knowingly or intentionally sold any goods or services to any entity in or from the State of Alabama.
“Autosource advertised the subject 2008 Ford Mustang Coupe on its website, which is a national/international internet website dedicated to selling of automobiles. Vehicles in Autosource’s inventory are listed on its website in order to receive offers and/or bids from individuals or other businesses who are interested in purchasing the vehicles. The impetus is on the individual who is interested in the automobile to then contact Autosource regarding the vehicle posted on its website.
“Prior to the transaction made the basis of this lawsuit, I am unaware of any prior business dealings that Auto-source had with Ms. Chamberlain. Au-tosource was contacted by Ms. Chamberlain after she saw the advertisement that had been placed on our website. Ms. Chamberlain traveled to the Auto-source dealership located at 2023 S 625 W. Woods Cross, Utah. After negotiating the purchase price for the Mustang, Ms. Chamberlain executed a purchase contract at the store’s location in Utah. Ms. Chamberlain paid for the vehicle in Utah. Ms. Chamberlain drove the vehicle off Autosource’s lot in Utah, and presumably returned to Alabama.”
Chamberlain filed no response to Auto-Source’s motion to dismiss.
On October 22, 2013, the trial court entered an order stating, in toto: “MOTION TO DISMISS PURSUANT TO RULE 12(B) filed by AUTO SOURCE MOTORS is hereby DENIED.” Petition, Appendix E (capitalization in original). AutoSource timely petitioned this Court for a writ of mandamus.

II. Standard of Review

“A petition for a writ of mandamus is the proper vehicle by which to challenge the denial of a motion to dismiss for lack of personal jurisdiction. Ex parte Dill, Dill, Carr, Stonbraker & Hutchings, P.C., 866 So.2d 519, 525 (Ala.2003). ‘An appellate court considers de novo a trial court’s judgment on a par *403 t/s motion to dismiss for lack of personal jurisdiction.’ Elliott v. Van Kleef, 830 So.2d 726, 729 (Ala.2002). However, ‘an appellate court must give deferential consideration to any findings of fact made by a trial court based on evidence received ore tenus in connection with a determination as to the nature and extent of a foreign defendant’s contacts with the forum state.’ Ex parte American Timber & Steel Co., 102 So.3d 347, 353 n. 7 (Ala.2011).
“‘A writ of mandamus is an extraordinary remedy, and it will be “issued only when there is: 1) a clear legal right in the petitioner to the order sought; 2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; 3) the lack of another adequate remedy; and 4) properly invoked jurisdiction of the court.” Ex parte United Serv. Stations, Inc., 628 So.2d 501, 503 (Ala.1993).’
“Ex parte Empire Fire & Marine Ins. Co., 720 So.2d 893, 894 (Ala.1998).”
Ex parte Merches, 151 So.3d 1075, 1078 (Ala.2014).

III. Analysis

“The extent of an Alabama court’s personal jurisdiction over an out-of-state defendant is governed by Rule 4.2(b), Ala. R. Civ. P. Rule 4.2(b), as amended in 2004, provides:
“ ‘(b) Basis for Out-of-State Service. An appropriate basis exists for service of process outside of this state upon a person or entity in any action in this state when the person or entity has such contacts with this state that the prosecution of the action against the person or entity in this state is not inconsistent with the constitution of this state or the Constitution of the United States.... ’
“In Hiller Investments, Inc. v. Insultech Group, Inc., 957 So.2d 1111, 1115 (Ala.2006), this Court explained:
“‘[Rule 4.2(b)] extends the personal jurisdiction of Alabama courts to the limit of due process under the United States and Alabama Constitutions. When applying Rule 4.2(b), this Court has interpreted the due process guaranteed under the Alabama Constitution as coextensive with that guaranteed under the United States Constitution.’
“ ‘The plaintiff has the burden of proving that the trial court has personal jurisdiction over the defendant.’ J.C. Duke & Assocs. Gen. Contractors, Inc. v. West, 991 So.2d 194, 196 (Ala.2008).
“ ““ “In considering a Rule 12(b)(2), Ala. R. Civ. P., motion to dismiss for want of personal jurisdiction, a court must consider as true the allegations of the plaintiffs complaint not controverted by the defendant’s affidavits, Robinson v. Giarmarco & Bill, P.C., 74 F.3d 253 (11th Cir.1996), and Cable/Home Communication Corp. v. Network Productions, Inc., 902 F.2d 829 (11th Cir.1990), and ‘where the plaintiffs complaint and the defendant’s affidavits conflict, the ... court must construe all reasonable inferences in favor of the plaintiff.’ Robinson, 74 F.3d at 255 (quoting Madara v. Hall, 916 F.2d 1510, 1514 (11th Cir.1990)).” ’
“ ‘ “Wenger Tree Serv. v. Royal Truck & Equip., Inc., 853 So.2d 888, 894 (Ala.2002) (quoting Ex parte McInnis, 820 So.2d 795, 798 (Ala.2001)). However, if the defendant makes a prima facie evidentia-ry showing that the Court has no personal jurisdiction, ‘the plaintiff is then required to substantiate the *404 jurisdictional allegations in the complaint by affidavits or other competent proof, and he may not merely reiterate the factual allegations in the complaint.’ Mercantile Capital, LP v. Federal Transtel, Inc., 193 F.Supp.2d 1243, 1247 (N.D.Ala.2002) (citing Future Tech. Today, Inc. v. OSF Healthcare Sys., 218 F.3d 1247, 1249 (11th Cir.2000)). See also Hansen v. Neumueller GmbH, 163 F.R.D. 471, 474-75 (D.Del.1995) (‘When a defendant files a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(2), and supports that motion with affidavits, plaintiff is required to controvert those affidavits with his own affidavits or other competent evidence in order to survive the motion.’) (citing Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61, 63 (3d Cir.1984)).”
“ ‘Ex parte Covington Pike Dodge, Inc., 904 So.2d 226, 229-30 (Ala.2004).’
“Ex parte Bufkin, 936 So.2d 1042, 1045 (Ala.2006).
“ ' “Two types of contacts can form a basis for personal jurisdiction: general contacts and specific contacts. General contacts, which give rise to general personal jurisdiction, consist of the defendant’s contacts "with the forum state that are unrelated to the cause of action and that are both ‘continuous and systematic.’ Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 n. 9, 415, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); [citations omitted]. Specific contacts, which give rise to specific jurisdiction, consist of the defendant’s contacts with the forum state that are related to the cause of action. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472-75, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Although the related contacts need not be continuous and systematic, they must rise to such a level as to cause the defendant to anticipate being haled into court in the forum state. Id.”
“‘Ex parte Phase III Constr., Inc., 723 So.2d 1263, 1266 (Ala.1998) (Lyons, J., concurring in the result). Furthermore, this Court has held that, for specific in personam jurisdiction, there must exist “a clear, firm nexus betweén the acts of the defendant and the consequences complained of.” Duke v. Young, 496 So.2d 37, 39 (Ala.1986). See also Ex parte Kamilewicz, 700 So.2d 340, 345 n. 2 (Ala.1997).’
“Elliott[ v. Van Kleefl, 830 So.2d [726,] 730 [ (Ala.2002) ].
“... Regarding specific jurisdiction, the United States Supreme Court has explained:
“ ‘[T]he constitutional touchstone remains whether the defendant purposefully established “minimum contacts” in the forum State. Although it has been argued that foreseeability of causing injury in another State should be sufficient to establish such contacts there when policy considerations so require, the Court has consistently held that this kind of foreseeability is not a “sufficient benchmark” for exercising personal jurisdiction. Instead, “the foreseeability that is critical to due process analysis ... is that the defendant’s conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.” In defining when it is that a potential defendant should “reasonably anticipate” out-of-state litigation, the Court frequently has drawn from the reasoning of Hanson v. Denckla, 357 U.S. 235, 253 [78 S.Ct. 1228, 2 L.Ed.2d 1283] (1958):
*405 “1 “The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant’s activity, but it is essential in each ease that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.”
‘“This “purposeful availment” requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of “random,” “fortuitous,” or “attenuated” contacts, or of the “unilateral activity of another party or a third person.” Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant himself that create a “substantial connection” with the forum State. Thus where the defendant “deliberately” has engaged in significant activities within a State, or has created “continuing obligations” between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by “the benefits and protections” of the forum’s laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.
[[Image here]]
“ ‘Once it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with “fair play and substantial justice.” Thus courts in “appropriate case[s]” may evaluate “the burden on the defendant,” “the forum State’s interest in adjudicating the dispute,” “the plaintiffs interest in obtaining convenient and effective relief,” “the interstate judicial system’s interest in obtaining the most efficient resolution of controversies,” and the “shared interest of the several States in furthering fundamental substantive social policies.” ’
“Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473-77, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (citations and footnotes omitted).
“This Court has summarized the test for minimum contacts explained in Burger King as follows:
“ ‘(1) The nonresident defendant’s contacts must be related to the plaintiffs cause of action or have given rise to it. (2) By its contacts the nonresident defendant must have purposefully availed itself of the privilege of conducting business in the forum state. (3) The nonresident defendant’s contacts with the forum must be “such that the nonresident defendant ‘ “should reasonably anticipate being haled into court” ’ in the forum state.” ’
“Ex parte Alamo Title Co., 128 So.3d 700, 711 (Ala.2013) (quoting Ex parte Excelsior Fin., Inc., 42 So.3d 96, 101 (Ala.2010), quoting in turn Burger King, 471 U.S. at 473, 105 S.Ct. 2174) (citations and footnote omitted). ‘The issue of personal jurisdiction “ ‘stands or falls on the unique facts of [each] case.’ ” ’ Ex parte Citizens Prop. Ins. Corp., 15 So.3d 511, 515 (Ala.2009) (quoting Ex parte I.M.C., Inc., 485 So.2d 724, 725 (Ala.1986)).”
Ex parte Merches, 151 So.3d at 1078-80. Being mindful that “[t]he plaintiff has the burden of proving that the trial court has *406 personal jurisdiction over the defendant,” J.C. Duke & Assocs. Gen. Contractors, Inc. v. West, 991 So.2d 194, 196 (Ala.2008), we now consider whether the trial court was correct in denying AutoSource’s motion to dismiss.

A. General Jurisdiction

“ ‘ “General contacts, which give rise to general personal jurisdiction, consist of the defendant’s contacts with the forum state that are unrelated to the cause of action and that are both ‘continuous and systematic.’ ” ’ ” Ex parte Merches, 151 So.3d at 1079 (quoting Elliott v. Van Kleef, 830 So.2d 726, 730 (Ala.2002), quoting in turn Ex parte Phase III Constr., Inc., 723 So.2d 1263, 1266 (Ala.1998) (Lyons, J., concurring in the result)). Here, neither Chamberlain’s complaint nor her affidavit expressly alleges or impliedly suggests that AutoSource has “continuous and systematic” contacts with the State of Alabama. Simply put, we have no basis on which to hold that the trial court can properly exercise general personal jurisdiction over Au-toSource in this case.

B. Specific Jurisdiction

As noted above, Chamberlain made only one allegation regarding personal jurisdiction in the three filings she submitted to the trial court (her complaint, her affidavit, and her motion for a default judgment). Specifically, Chamberlain alleged in her complaint:
“Jurisdiction is proper in that Auto Source Motors took actions aimed at Alabama citizens in the course of its business and in particular sought to avail itself of use of the laws of the state of Alabama by claiming its cars could be titled in the state of Alabama as an incentive to Ms. Chamberlain, a citizen of Alabama, to buy one of their vehicles.”
The above-quoted allegation that, during the course of the isolated sale of the 2008 Ford Mustang Coupe automobile to Chamberlain, AutoSource told Chamberlain that she could title the automobile in Alabama does not establish the minimum contacts necessary to provide the trial court with specific personal jurisdiction over Auto-Source. Assuming, without deciding, that AutoSource’s statement during the isolated sale to Chamberlain of the 2008 Ford Mustang Coupe that Chamberlain could title the automobile in Alabama actually constitutes a contact with the State of Alabama, that sole, isolated contact is insufficient to support a finding of specific personal jurisdiction. See, e.g., Network Prof'ls, Inc. v. Network Int’l, Ltd., 146 F.R.D. 179, 181 n. 1 (D.Minn.1993) (“The due process analysis focuses on a defendant’s contacts with the forum, not its contacts with the plaintiff; thus, an isolated sale will not support jurisdiction, even if the cause , of action arises from the sale.”); Chung v. NANA Dev. Corp., 783 F.2d 1124, 1126 (4th Cir.1986) (noting that a sale consisting of no more than an “‘isolated’ or ‘attenuated’ single transaction ... has always been deemed inadequate to satisfy due process”); Charia v. Cigarette Racing Team, Inc., 583 F.2d 184, 189 (5th Cir.1978) (holding that “four sporadic and isolated sales” did not support personal jurisdiction).[3]
AutoSource’s affidavit, by and through its then president, W. Scott Kjar, established that AutoSource’s advertisement of the 2008 Ford Mustang Coupe automobile *407 on its Web site did not constitute a purposeful contact with Alabama because, like an advertisement placed in a nationally delivered newspaper or journal, it was not directed at Alabama specifically and the advertisement was passive in nature. Additionally, AutoSource’s affidavit established that the sale of the 2008 Ford Mustang Coupe to Chamberlain was a single, isolated contact with an Alabama resident, which was' initiated by the Alabama resident rather than AutoSource. Auto-Source’s affidavit also established that its only contact with Alabama was a telephone call initiated by Chamberlain. Furthermore, AutoSource’s affidavit established that it is not registered to do business in Alabama; that it is not required to pay taxes in Alabama; that it owns no property or has no assets in Alabama; that it does not maintain an office in Alabama; that it does not have any employees in Alabama; that it does not have a telephone listing in Alabama; and that, before the sale to Chamberlain of the 2008 Ford Mustang Coupe, it had never knowingly sold, marketed, advertised, or solicited the sale of any goods or services to any person or entity in or from Alabama. Accordingly, based on the principles of law set forth in Ex parte Merches, supra, we conclude that in Kjar’s affidavit AutoSource made a pri-ma facie showing that it had not purposefully availed itself of the privilege of conducting activities within Alabama and, thus, that AutoSource did not have the minimum contacts necessary to subject it to personal jurisdiction in Alabama. See id.
The prima facie showing made by Kjar’s affidavit shifted to Chamberlain the burden of proving by affidavits or other competent evidence that AutoSource had purposefully availed itself of the privilege of conducting activities within Alabama. See Ex parte Merches, supra. However, as noted above, Chamberlain’s affidavit did not rebut the prima facie showing-made by AutoSource in that her affidavit failed to establish that AutoSource is subject to suit in Alabama pursuant to either general personal jurisdiction or specific personal jurisdiction; consequently, we hold that the trial court erred in denying AutoSource’s motion to dismiss Chamberlain’s complaint for lack of personal jurisdiction. Auto-Source’s petition for a writ of mandamus is, therefore, due to be granted.

IV. Conclusion

PETITION GRANTED; WRIT ISSUED.
MOORE, C.J., and PARKER, SHAW, and WISE, JJ., concur.
AutoSource has demonstrated a clear legal right to the relief it seeks. Therefore, we grant the petition for a writ of mandamus and direct the Montgomery Circuit Court (1) to vacate its order denying AutoSource’s motion to dismiss for lack of personal jurisdiction and (2) to enter an order granting AutoSouree’s motion to dismiss for lack of personal jurisdiction.

. In various documents submitted to this Court, this entity is referred to variously as AutoSource Motors, LLC, Autosource Motors, LLC, and Auto Source Motors, LLC. We have chosen to use AutoSource Motors, LLC, in this opinion but have made no effort to change the name in documents quoted in this opinion.

. Although unclear, it appears that Chamberlain filed her affidavit in support of a motion for a default judgment, which she filed on the same day she filed her affidavit.

. Network Professionals, Inc., supra, Chung, supra, and Charia, supra, were cited with approval in Ex parte Troncalli Chrysler Plymouth Dodge, Inc., 876 So.2d 459, 464 (Ala.2003), a case in which this Court granted the petition for a writ of mandamus and directed the trial court to vacate its order denying the petitioner’s motion to dismiss and to enter an order dismissing the complaint for lack of personal jurisdiction.