Rel: June 27, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**.  Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2024-2025

_____

## SC-2024-0778

_____

### Ex parte GBC International Bank

### PETITION FOR WRIT OF MANDAMUS

### (In re: Michael Straus

### v.

### GBC International Bank)

### (Jefferson Circuit Court: CV-24-901877)

BRYAN, Justice.

GBC International Bank ("GBC"), a California corporation,

petitions this Court for a writ of mandamus directing the Jefferson

Circuit Court ("the circuit court") to dismiss, for lack of personal jurisdiction, a complaint filed by Michael Straus. For the reasons explained below, we grant GBC's petition and issue the writ.

## Background

On May 10, 2023, Straus wired $60,000 to a bank account maintained by GBC and owned by Apex Oil and Gas Trading, LLC ("Apex"). According to Straus, Apex failed to provide the services Straus had paid for and then "withdrew the funds from its account with GBC and disappeared, absconding with Straus'[s] money." In November 2023, GBC informed Apex that it had closed the account at issue and had severed its relationship with Apex.

Straus commenced this action against GBC in May 2024, asserting claims of negligence and wantonness. Straus alleged that GBC had closed Apex's account because "it knew that Apex was engaged in fraud or other criminal activities facilitated by GBC." According to Straus, "[o]n its own website, GBC [had] recognize[d] its obligations under the Patriot Act to undertake such due diligence and investigation as might be needed in order to prevent exactly the kind of theft that occurred here."

2

GBC filed a motion to dismiss Straus's complaint, arguing that the circuit court lacked either general or specific personal jurisdiction over it. GBC attached to its motion an affidavit executed by Richard Holmes, its executive vice president and chief financial officer. Straus submitted a response to GBC's motion to dismiss, along with a "declaration" that Straus had executed. GBC submitted a reply to Straus's response. On October 17, 2024, the circuit court entered an order denying GBC's motion to dismiss. GBC's mandamus petition followed.

## Standard of Review

> "'"A writ of mandamus is an extraordinary remedy, and is appropriate when the petitioner can show (1) a clear legal right to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) the properly invoked jurisdiction of the court. Ex parte Inverness Constr. Co., 775 So. 2d 153, 156 (Ala. 2000)."'

"Ex parte Gulf Health Hosps., Inc., 321 So. 3d 629, 632 (Ala. 2020)(quoting Ex parte BOC Grp., Inc., 823 So. 2d 1270, 1272 (Ala. 2001)).

> "'"[A] petition for a writ of mandamus is the proper device by which to challenge the denial of a motion to dismiss for lack of in personam jurisdiction. See Ex parte McInnis, 820 So. 2d 795 (Ala. 2001); Ex parte Paul

Maclean Land Servs., Inc., 613 So. 2d 1284, 1286 (Ala. 1993). '"An appellate court considers de novo a trial court's judgment on a party's motion to dismiss for lack of personal jurisdiction."' Ex parte Lagrone, 839 So. 2d 620, 623 (Ala. 2002)(quoting Elliott v. Van Kleef, 830 So. 2d 726, 729 (Ala. 2002)). Moreover, '[t]he plaintiff bears the burden of proving the court's personal jurisdiction over the defendant.' Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 50 (1st Cir. 2002)."

"'Ex parte Dill, Dill, Carr, Stonbraker & Hutchings, P.C., 866 So. 2d 519, 525 (Ala. 2003).

"'"'In considering a Rule 12(b)(2), Ala. R. Civ. P., motion to dismiss for want of personal jurisdiction, a court must consider as true the allegations of the plaintiff's complaint not controverted by the defendant's affidavits, Robinson v. Giarmarco & Bill, P.C., 74 F.3d 253 (11th Cir. 1996), and Cable/Home Communication Corp. v. Network Productions, Inc., 902 F.2d 829 (11th Cir. 1990), and "where the plaintiff's complaint and the defendant's affidavits conflict, the ... court must construe all reasonable inferences in favor of the plaintiff." Robinson, 74 F.3d at 255 (quoting Madara v. Hall, 916 F.2d 1510, 1514 (11th Cir. 1990)).'"

"'Wenger Tree Serv. v. Royal Truck & Equip., Inc., 853 So. 2d 888, 894 (Ala. 2002)(quoting Ex parte McInnis, 820 So. 2d 795, 798 (Ala. 2001)). However, if the defendant makes a prima facie evidentiary showing that the Court has no personal jurisdiction, "the plaintiff is then required to substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof, and he may not merely reiterate the factual allegations in the complaint." Mercantile Capital, LP v. Federal Transtel, Inc., 193 F. Supp. 2d 1243, 1247 (N.D. Ala. 2002)(citing Future Tech. Today, Inc. v. OSF Healthcare Sys., 218 F.3d 1247, 1249 (11th Cir. 2000)). See also Hansen v. Neumueller GmbH, 163 F.R.D. 471, 474-75 (D. Del. 1995)("When a defendant files a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2), and supports that motion with affidavits, plaintiff is required to controvert those affidavits with his own affidavits or other competent evidence in order to survive the motion.")(citing Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61, 63 (3d Cir. 1984)).'

"Ex parte Covington Pike Dodge, Inc., 904 So. 2d 226, 229-30 (Ala. 2004)."

Ex parte Kentucky Farm Bureau Mut. Ins. Co., [Ms. SC-2024-0608, Mar. 21, 2025] ____ So. 3d ____, ____ (Ala. 2025).

Analysis

The parties agree that Alabama courts do not have general personal jurisdiction over GBC. Thus, the only issue presented is whether the

5

circuit court has specific personal jurisdiction over GBC. In <u>Ex parte</u> <u>Alamo Title Co.</u>, 128 So. 3d 700, 709-10 (Ala. 2013), this Court stated:

> "Rule 4.2(b), Ala. R. Civ. P., permits Alabama courts to exercise personal jurisdiction over an out-of-state defendant. It provides, in pertinent part, as follows:
>
> > "'(b) <u>Basis for Out-of-State Service</u>. An appropriate basis exists for service of process outside of this state upon a person or entity in any action in this state when the person or entity has such contacts with this state that the prosecution of the action against the person or entity in this state is not inconsistent with the constitution of this state or the Constitution of the United States ....'
>
> "Regarding Rule 4.2(b), this Court has said:
>
> > "'In accordance with the plain language of Rule 4.2, both before and after the 2004 amendment, Alabama's long-arm rule consistently has been interpreted by this Court to extend the jurisdiction of Alabama courts to the permissible limits of due process. <u>Duke v. Young</u>, 496 So. 2d 37 (Ala. 1986); <u>DeSotacho, Inc. v. Valnit Indus., Inc.</u>, 350 So. 2d 447 (Ala. 1977). As this Court reiterated in <u>Ex parte McInnis</u>, 820 So. 2d 795, 802 (Ala. 2001)(quoting <u>Sudduth v. Howard</u>, 646 So. 2d 664, 667 (Ala. 1994)), and even more recently in <u>Hiller Investments Inc. v. Insultech Group, Inc.</u>, 957 So. 2d 1111, 1115 (Ala. 2006): "<u>Rule 4.2, Ala. R. Civ. P., extends the personal jurisdiction of the Alabama courts to the limit of due process under the federal and state constitutions.</u>" (Emphasis added.)'

"Ex parte DBI, Inc., 23 So. 3d 635, 643 (Ala. 2009).  See also Ex parte McNeese Title[, LLC], 82 So. 3d [670,] 673 [(Ala. 2001)].

"'"Two types of contacts can form a basis for personal jurisdiction: general contacts and specific contacts. General contacts, which give rise to general personal jurisdiction, consist of the defendant's contacts with the forum state that are unrelated to the cause of action and that are both 'continuous and systematic.' Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 n.9, 415, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984); [citations omitted].  Specific contacts, which give rise to specific jurisdiction, consist of the defendant's contacts with the forum state that are related to the cause of action.  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472-75, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985). Although the related contacts need not be continuous and systematic, they must rise to such a level as to cause the defendant to anticipate being haled into court in the forum state.  Id."

"'Ex parte Phase III Constr., Inc., 723 So. 2d 1263, 1266 (Ala. 1998)(Lyons, J., concurring in the result).  Furthermore, this Court has held that, for specific in personam jurisdiction, there must exist "a clear, firm nexus between the acts of the defendant and the consequences complained of." Duke v. Young, 496 So. 2d 37, 39 (Ala. 1986).  See also Ex parte Kamilewicz, 700 So. 2d 340, 345 n.2 (Ala. 1997).

7

"'In the case of either general <u>in personam</u> jurisdiction or specific <u>in personam</u> jurisdiction, "[t]he 'substantial connection' between the defendant and the forum state necessary for a finding of minimum contacts must come about by <u>an action of the defendant purposefully directed toward the forum State.</u>" <u>Asahi Metal Indus. Co. v. Superior Court of California</u>, 480 U.S. 102, 112, 107 S. Ct. 1026, 94 L. Ed. 2d 92 (1987). This purposeful-availment requirement assures that a defendant will not be haled into a jurisdiction as a result of "'the unilateral activity of another person or a third person.'" <u>Burger King</u>, 471 U.S. at 475, 105 S. Ct. 2174, quoting <u>Helicopteros Nacionales de Colombia, S.A. v. Hall</u>, 466 U.S. 408, 417, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984).

"'Only after such minimum contacts have been established does a court then consider those contacts in the light of other factors -- such as the burden on the defendant of litigating in the forum state and the forum state's interest in adjudicating the dispute, <u>Burger King</u>, 471 U.S. at 476-77, 105 S. Ct. 2174 -- to determine whether the exercise of personal jurisdiction over the nonresident defendant comports with "'traditional notions of fair play and substantial justice.'" <u>Brooks v. Inlow</u>, 453 So. 2d 349, 351 (Ala. 1984), quoting <u>International Shoe [Co. v. Washington]</u>, 326 U.S. [310] at 316, 66 S. Ct. 154 [(1945)]. See also <u>Burger King</u>, 471 U.S. at 476-77, 105 S. Ct. 2174.'

"<u>Elliott v. Van Kleef</u>, 830 So. 2d [726,] 730-31 [(Ala. 2002)].

"A defendant is constitutionally amenable to a forum's specific jurisdiction if it possesses sufficient minimum contacts with the forum to satisfy due-process requirements and if the forum's exercise of jurisdiction comports with

8

'"traditional notions of fair play and substantial justice."' International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945)(quoting Milliken v. Meyer, 311 U.S. 457, 463, 61 S. Ct. 339, 85 L. Ed. 278 (1940)). See Ex parte Kohlberg Kravis Roberts & Co., 78 So. 3d 959, 972 (Ala. 2011)(quoting Ex parte McInnis, 820 So. 2d 795, 802-03 (2001)). This two-part test embodies the controlling due-process principle that a defendant must have 'fair warning' that a particular activity may subject it to the jurisdiction of a foreign sovereign. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985). See Ex parte Kohlberg Kravis Roberts & Co., 78 So. 3d at 970."

In its order denying GBC's motion to dismiss, the circuit court concluded that, in viewing Straus's factual allegations as true, GBC had purposefully availed itself of the privilege of conducting business in Alabama through "affirmative communications concerning a federal statute of nationwide coverage, [namely, the USA PATRIOT ACT,] the violation of which[,] by definition[,] would give rise to a claim in Alabama."[1] Specifically, the circuit court noted Straus's allegations that, when choosing to wire money to Apex's account, he had relied on the following statement appearing on GBC's website:

---

[1]In deciding this mandamus petition, we do not intimate that a private right of action may exist for alleged violations of the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act, Pub. L. No. 107-56, 115 Stat. 272 (2001), also known as the "USA PATRIOT Act."

"Section 326 of the USA PATRIOT ACT requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account or changes an existing account. This federal requirement applies to all new customers and current customers. This information is used to assist the United States government in the fight against the funding of terrorism and money-laundering activities."

The circuit court determined that, "[o]n its face, this meets the due process tests for specific jurisdiction under both the U.S. and Alabama Constitutions."

Among other cases, GBC cites <u>Ex parte Troncalli Chrysler Plymouth Dodge, Inc.</u>, 876 So. 2d 459 (Ala. 2003), in support of its argument that the circuit court lacks specific personal jurisdiction over it. In <u>Ex parte Troncalli</u>, a plaintiff wanted to purchase a certain type of truck from an Alabama dealer, but the Alabama dealer did not have one. Through a computer database maintained by the truck manufacturer, the Alabama dealer located a Georgia dealer with that type of truck, and the plaintiff paid the Alabama dealer for the truck. In turn, the Alabama dealer paid the Georgia dealer. After the purchase of the truck, the plaintiff discovered that the truck had been wrecked and sued both dealers in Alabama.

The Georgia dealer argued that the trial court did not have personal jurisdiction over it; the trial court denied the Georgia dealer's motion to dismiss. In considering the issue of specific personal jurisdiction raised in the Georgia dealer's mandamus petition to this Court, we stated, in relevant part:

"Of particular relevance is whether the plaintiff initiated the sale or contact. See Madison Consulting Group v. South Carolina, 752 F.2d 1193 (7th Cir. 1985); CBP Res., Inc. v. Ingredient Res. Corp., 954 F. Supp. 1106 (M.D.N.C. 1996); Regent Lighting Corp. v. American Lighting Concept, Inc., 25 F. Supp. 2d 705 (M.D.N.C. 1997)('the contacts to be considered for purposes of personal jurisdiction are those actually generated by Defendants, not those created by the unilateral acts of Plaintiff'); Wells American Corp. v. Sunshine Electronics, 717 F. Supp. 1121, 1123 (D.S.C. 1989); American Stair Corp. v. Renata Constr. Co., 625 F. Supp. 136 (N.D. Ill. 1985).

"Thus, something more than an isolated contact initiated by an in-state plaintiff is required to satisfy the 'purposeful-availment' prong of the due-process analysis. 'Something more' might involve 'prior negotiations and contemplated future consequences, along with ... the parties' actual course of dealing.' Burger King Corp. v. Rudzewicz, 471 U.S. 462, 463, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)(emphasis added). 'Something more' might be found 'where the defendant "deliberately" has engaged in significant activities within [Alabama] ... or has created "continuing obligations" between himself and residents of [Alabama].' 471 U.S. at 475-76, 105 S. Ct. 2174 (emphasis added).

"[The plaintiff] argues that the 'something more' in this action is the use of the 'computer database locator,' which,

11

[the plaintiff] contends, 'allows other Chrysler dealers to know [the Georgia dealer's] inventory for the purposes of making a sale to [their] customers.' [The plaintiff]'s brief, at 19. Use of this database, [the plaintiff] contends, was an 'act[] made by [the Georgia dealer] purposefully directed to Alabama entities.' Id. at 20. We disagree.

"This Court has stated that '"evidence of mere placement of advertisements in nationally distributed paper[s] or journals does not rise to the level of purposeful contact with a forum required by the Constitution in order to exercise personal jurisdiction over the advertiser."' Elliott v. Van Kleef, 830 So. 2d 726, 732 (Ala. 2002)(quoting Federated Rural Elec. Ins. Co. v. Kootenai Elec. Coop., 17 F.3d 1302, 1305 (10th Cir. 1994)). In such a case, the advertiser 'cannot be said to have purposefully directed his listing specifically at one state.' Elliott, 830 So. 2d at 732.

"'Internet advertising over a web site falls under the same rubric as advertising in a national publication.' Christopher E. Friel, Notes and Comments, Downloading a Defendant: Is Categorizing Internet Contacts a Departure from the Minimum Contacts Test? 4 Roger Williams U.L. Rev. 293, 308 (1998). This is especially true where the Web site is 'passive,' that is, where the site serves 'as little more than an electronic billboard for the posting of information.' Butler v. Beer Across America, 83 F. Supp. 2d [1261,] 1268 [(N.D. Ala. 2000)]."

Ex parte Troncalli, 876 So. 2d at 465.

This Court's decision in Ex parte Troncalli was also noted in Ex parte AutoSource Motors, LLC, 156 So. 3d 397 (Ala. 2014). In Ex parte AutoSource Motors, the plaintiff saw an advertisement for an automobile on the website of AutoSource Motors, LLC ("AutoSource"), a Utah

12

company. The plaintiff contacted AutoSource about the automobile and was allegedly told that the automobile had been rebuilt and could be titled in Alabama. After traveling to Utah to purchase the automobile, the plaintiff attempted to title it in Alabama. The plaintiff then discovered that the title for the automobile was a junk title -- not a salvage title -- and that, therefore, she would never be able to title it in Alabama. She sued AutoSource in Alabama, and AutoSource moved to dismiss the complaint, arguing that the trial court lacked personal jurisdiction over it. After the trial court denied the motion to dismiss, AutoSource petitioned this Court for a writ of mandamus.

Regarding the issue of specific personal jurisdiction, this Court stated, in relevant part:

"AutoSource's affidavit, by and through its then president, … established that AutoSource's advertisement of the … automobile on its Web site did not constitute a purposeful contact with Alabama because, like an advertisement placed in a nationally delivered newspaper or journal, it was not directed at Alabama specifically and the advertisement was passive in nature. Additionally, AutoSource's affidavit established that the sale of the [automobile] to [the plaintiff] was a single, isolated contact with an Alabama resident, which was initiated by the Alabama resident rather than AutoSource. AutoSource's affidavit also established that its only contact with Alabama was a telephone call initiated by [the plaintiff]. Furthermore, AutoSource's affidavit established that it is not registered to

13

do business in Alabama; that it is not required to pay taxes in Alabama; that it owns no property or has no assets in Alabama; that it does not maintain an office in Alabama; that it does not have any employees in Alabama; that it does not have a telephone listing in Alabama; and that, before the sale to [the plaintiff] of the [automobile], it had never knowingly sold, marketed, advertised, or solicited the sale of any goods or services to any person or entity in or from Alabama. Accordingly, based on the principles of law set forth in Ex parte Merches, [151 So. 3d 1075 (Ala. 2014)], we conclude that in [its president]'s affidavit AutoSource made a prima facie showing that it had not purposefully availed itself of the privilege of conducting activities within Alabama and, thus, that AutoSource did not have the minimum contacts necessary to subject it to personal jurisdiction in Alabama. See id."

Ex parte AutoSource Motors, 156 So. 3d at 406-07.

Similarly, in this case, in support of its motion to dismiss, GBC produced an affidavit executed by Richard Holmes, its executive vice president and chief financial officer. Holmes averred:

"1. GBC … is a financial institution with its headquarters [in] Los Angeles, [California]. The business is incorporated in California and maintains its principal place of business in California. [GBC] has never been incorporated in Alabama nor has it ever maintained its principal place of business within the State of Alabama.

"2. GBC … has never been registered or qualified to do business in Alabama. It has never engaged in soliciting deposits from the state. It has never maintained a Registered Agent for service of process within the state and has never consented to personal jurisdiction in any courts within the State of Alabama. [GBC] does not own any real estate,

14

personal property, or other assets within the State of Alabama and has never maintained any telephone, computer, server, or other electronic equipment within the State of Alabama. It currently has no deposit accounts for residents of the State of Alabama. GBC … has never paid any taxes within the state, has never engaged in any state-specific targeted marketing or advertising towards consumers in Alabama, and has never purchased television or radio advertisements to market towards residents of the State of Alabama."

Like the defendant's affidavit in Ex parte AutoSource Motors, Holmes's affidavit in this case "made a prima facie showing that [GBC] had not purposefully availed itself of the privilege of conducting activities within Alabama and, thus, that [GBC] did not have the minimum contacts necessary to subject it to personal jurisdiction in Alabama." 156 So. 3d at 407. "The prima facie showing made by [Holmes]'s affidavit shifted to [Straus] the burden of proving by affidavits or other competent evidence that [GBC] had purposefully availed itself of the privilege of conducting activities within Alabama. See Ex parte Merches, [151 So. 3d 1075 (Ala. 2014)]." Id.

In response to Holmes's affidavit, Straus produced a "declaration" that concluded with the following statement: "I affirm the foregoing to be true on penalty of perjury under the laws of Alabama." However, Straus's declaration did not contain the date, name, or signature of a notary

15

public, affirming that Straus was swearing to the truth of the factual averments in the declaration.

In Ex parte Puccio, 923 So. 2d 1069, 1071 (Ala. 2005), this Court considered an unsworn affidavit produced by a defendant in support of his motion to dismiss for lack of personal jurisdiction. We noted:

> "'An affidavit sufficient to satisfy Rule 56(e)[, Ala. R. Civ. P.,] is a written declaration or statement of facts, made voluntarily and based on personal knowledge, and confirmed by the oath or affirmation of the party making it, taken before a person having authority to administer an oath or affirmation.' Couch v. City of Sheffield, 708 So. 2d 144, 152-53 (Ala. 1998). [The defendant]'s affidavit does not contain the date, name, or signature of a notary public, affirming that [the plaintiff] was swearing to the truth of the factual averments in the affidavit."

Ex parte Puccio, 923 So. 2d at 1071 n.3. The Ex parte Puccio Court suggested that the trial court could not have properly considered the defendant's unsworn affidavit in that case but that, even if the trial court could have considered it, the contents of the unsworn affidavit did not address pertinent allegations made by the plaintiffs. Id. at 1073.

Although the unsworn affidavit at issue in Ex parte Puccio was produced by the defendant moving for a dismissal based on an alleged lack of personal jurisdiction, the rationale of Ex parte Puccio regarding the insufficiency of unsworn affidavits as evidence is equally applicable

16

to nonmovants responding to a prima facie showing by the movant that the trial court lacks personal jurisdiction over it. See Ex parte Kentucky Farm Bureau Mut. Ins. Co., \_\_\_\_ So. 3d at \_\_\_\_ ("'"When a defendant files a motion to dismiss pursuant to [Rule] 12(b)(2), and supports that motion with affidavits, plaintiff is required to controvert those affidavits with his own affidavits or other competent evidence in order to survive the motion."'" (quoting Ex parte Covington Pike Dodge, Inc., 904 So. 2d 226, 230 (Ala. 2004), quoting in turn Hansen v. Neumueller GmbH, 163 F.R.D. 471, 474-75 (D. Del. 1995))(emphasis added)).

In this case, the circuit court's order denying GBC's motion to dismiss indicates that the circuit court considered the contents of Straus's unsworn declaration in disposing of the motion to dismiss. Under the rationale of Ex parte Puccio, the circuit court could not have properly done so. Nevertheless, as in Ex parte Puccio, even if the circuit court could have properly considered Straus's unsworn declaration, its contents fail to demonstrate that the circuit court has specific personal jurisdiction over GBC.

It is undisputed that the events giving rise to this action stem from a single transaction between Straus and GBC that, at least as concerns

17

them, was initiated by Straus. Namely, Straus unilaterally decided to wire $60,000 to a GBC account owned by Apex. This unilateral contact by Straus was insufficient to render GBC amenable to the personal jurisdiction of Alabama courts. "'Th[e] purposeful-availment requirement assures that a defendant will not be haled into a jurisdiction as a result of "'the unilateral activity of another person or a third person.'"'" Ex parte Alamo Title Co., 128 So. 3d at 710 (quoting Elliot v. Van Kleef, 830 So. 2d 726, 731 (Ala. 2002), quoting in turn Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985), quoting in turn Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 417 (1984)). "[S]omething more than an isolated contact initiated by an in-state plaintiff is required to satisfy the 'purposeful-availment' prong of the due-process analysis." Ex parte Troncalli, 876 So. 2d at 465.

In Straus's unsworn declaration, he asserted the following regarding GBC's statements on its website concerning its compliance with federal law: "I respectfully submit that any bank that holds itself out to a citizen of Alabama in this way must foresee being called to account in the courts of Alabama for any harm suffered in reliance on such representations."

However, when general representations appear on a company's website that is viewable by anyone with access to the Internet, the company "'cannot be said to have purposefully directed [its representations] specifically at one state.'" Ex parte Troncalli, 876 So. 2d at 465 (quoting Elliott, 830 So. 2d at 732). Moreover, GBC's general representations concerning its compliance with federal law "w[ere] passive in nature." Ex parte AutoSource Motors, 156 So. 3d at 407. "[T]hat is," at least insofar as those general representations were concerned, "the site serve[d] 'as little more than an electronic billboard for the posting of information.'" Ex parte Troncalli, 876 So. 2d at 465 (quoting Butler v. Beer Across America, 83 F. Supp. 2d 1261, 1268 (N.D. Ala. 2000)).

Consequently, even considering the contents of Straus's unsworn declaration, he failed to rebut GBC's "prima facie showing that it had not purposefully availed itself of the privilege of conducting activities within Alabama and, thus, that [GBC] did not have the minimum contacts necessary to subject it to personal jurisdiction in Alabama." Ex parte AutoSource Motors, 156 So. 3d at 407.

19

## Conclusion

Straus failed to rebut GBC's prima facie showing that it had not purposefully availed itself of the privilege of conducting activities within Alabama and, thus, that GBC did not have the minimum contacts necessary to subject it to personal jurisdiction in Alabama. Even if the circuit court could have properly considered Straus's unsworn declaration asserting that he had relied on representations appearing on GBC's website when deciding to wire money to an account maintained by GBC, those general representations made on GBC's website that were viewable by anyone with access to the Internet are insufficient to support the circuit court's exercise of specific personal jurisdiction over GBC based on its suit-related conduct.

Therefore, GBC has demonstrated a clear legal right to a dismissal of Straus's complaint based on the circuit court's lack of specific personal jurisdiction over it. Accordingly, GBC's petition is due to be granted, and the circuit court is hereby directed to vacate its order denying GBC's motion to dismiss and to enter an order dismissing Straus's complaint.

PETITION GRANTED; WRIT ISSUED.

Stewart, C.J., and Shaw, Wise, Sellers, Mendheim, Cook, McCool, and Lewis, JJ., concur.